UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

DIVISION \_\_\_\_

**Ashton Levert,**

Plaintiff

v.

**Louisiana Christian University,**

Defendant.

**CIVIL ACTION NO.:**

JUDGE

MAGISTRATE JUDGE

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

NOW COMES Plaintiff, Ashton Levert, by and through undersigned counsel, and files this Complaint against Defendant Louisiana Christian University (hereinafter "LCU" or "Defendant"), and respectfully alleges as follows, referencing the attached Exhibit Index for supporting documentation:

**I. JURISDICTION AND VENUE**

1. This is an action arising under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., which prohibits discrimination on the basis of sex, including sexual harassment and gender-based violence, in educational programs or activities receiving federal financial assistance.
2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331(federal question jurisdiction) because this action arises under the laws of the United States, specifically Title IX.
3. Venue is proper in this district under **28 U.S.C. § 1391(b)** because Defendant Louisiana Christian University is located in **Pineville, Louisiana**, within this district, and the events giving rise to this claim occurred in this district.

**II. PARTIES**

4. Plaintiff Ashton Levert is a former student of Louisiana Christian University, and a resident of Denham Springs, Louisiana.

5. Defendant Louisiana Christian University is a private university located in Pineville, Louisiana, that receives federal funding and is therefore subject to the requirements of Title IX. It can be served at Louisiana Christian University, 1140 College Drive, Pineville, LA 71359.

## III. FACTUAL ALLEGATIONS

### 6. Plaintiff's Allegations of Sexual Harassment

Plaintiff, a former student of Louisiana Christian University (LCU), was subjected to repeated instances of inappropriate conduct by Enrico Canella, a professor at the university. During one such incident, Canella crossed physical boundaries by directing Plaintiff to place her hand on her diaphragm, at which point he pressed his fist against her hand and into her chest, including her breasts. This interaction caused Plaintiff significant distress.

### 7. Inappropriate Text Messages and Unprofessional Conduct

Plaintiff received numerous inappropriate text messages from Professor Cannella, which included personal oversharing, grooming behavior, and unprofessional discussions about other staff members and students. These communications caused Plaintiff significant emotional distress, blurred professional boundaries, and contributed to a hostile educational environment. Examples include:

- **Grooming Behavior**:
  - "You shall be my protégé!! You're my first student I got as a freshman!" (see Exhibit F).
- **Personal Oversharing**:
  - "I have a few mental health issues and last night I was in a lil manic mode. It's hard for me to control at times so I get embarrassed about it easily" (see Exhibit G).
  - "I'm very unsupported in this world… Madison doesn't care about all that" (see Exhibit H).
- **Unprofessional Comments About Staff and Students**:
  - "Also… friggin Wittkopp didn't mention me at all! People gonna think I just skipped" (see Exhibit I).

### 8. Reporting of the Harassment and Initial University Response

On February 2, 2024, Plaintiff's mother submitted a written statement to Dr. Cheryl D. Clark, Vice President of the university, and Dr. Moorman, the Title IX representative. Plaintiff's father also contacted Dr. Jefferys, an LCU administrator, seeking assistance regarding the harassment. Dr. Jefferys, who had a prior relationship with Plaintiff's father, stated that he "wants [the professor] gone." Following this, Plaintiff received apology letters from Enrico, one addressed to her parents and one to Plaintiff, which failed to mitigate the emotional distress caused by his actions. These letters are labeled "FEB 2 Letters" and are attached as evidence (see Exhibit A).

### 9. Issues with Accessing University Resources

In January, Plaintiff had attempted to contact LCU's financial aid office via her university email to resolve issues concerning her student loan. Her school email was subsequently deactivated before a response was

received. Despite further attempts to reach the office via her personal email and repeated phone calls, Plaintiff received no response.

### 10. Breakdown in Title IX Communications

On February 22, following several unacknowledged attempts to contact the Title IX office, Plaintiff reached out directly to Dr. Moorman by phone. In this call, Dr. Moorman informed Plaintiff that LCU had sent a letter stating that, due to FERPA policies, they could not respond to her parents regarding her complaint. However, there had been no previous communication with Plaintiff herself clarifying this policy until she called. The letter also stated that LCU was not legally obligated to conduct a Title IX investigation due to Plaintiff's withdrawal from the university. During the call, Dr. Moorman requested that Plaintiff forward additional documents, including financial aid communications and audio recordings that could substantiate her claims. The attachments to this letter include the requested financial aid emails (see Exhibit B) and the audio recording (see Exhibit C).

### 11. Additional Communication Delays and Retaliatory Conduct

Plaintiff followed up with Dr. Moorman multiple times, as there was no response to her submissions for several days. When Dr. Moorman finally replied, she only addressed the financial aid concerns. Plaintiff continued to experience a lack of response from the university, even as her withdrawal negatively impacted her financial aid eligibility, specifically her TOPS Performance Award. This lack of response further compounded Plaintiff's emotional distress and left her feeling abandoned by the institution she attended.

### 12. Confusion and Contradictions in University's FERPA Position

On March 6, 2024, Plaintiff received an email from Dr. Clark, which contradicted previous statements made by the Title IX office regarding FERPA policies. Dr. Clark provided a link to a FERPA waiver form, despite having earlier stated that LCU did not possess such a waiver. The tone of this email was hyper-legalistic and failed to offer any meaningful support or acknowledgment of Plaintiff's situation. This lack of clarity and disregard for Plaintiff's emotional well-being further intensified her sense of isolation and frustration with the university. This email is cited as the point at which Plaintiff and her family decided to pursue legal recourse.

### 13. Retaliation and Hostile Campus Environment

After withdrawing from LCU, Plaintiff's former classmates, many of whom were in the Music and Theatre departments, began sending aggressive messages accusing her of selfishness and inconsideration for leaving the university. These messages, which Plaintiff never responded to, further isolated her. The sole classmate with whom Plaintiff remained in contact was Camdyn, who informed Plaintiff that LCU had initiated an internal investigation into Enrico's conduct. Dr. Clark reportedly called students from the Music and Theatre departments into her office one by one and questioned them about whether Enrico had ever made them uncomfortable or if they were aware of Plaintiff's complaint. These interviews were done in a way that made Plaintiff's name public within the departments, and students reportedly met before seeing Dr. Clark to discuss what they would say. Camdyn explained that the students were pressured into discrediting Plaintiff's account and protecting the accused professor.

**14. Hostile Campus Climate and Inadequate Title IX Response**

In October 2023, LCU held a Title IX assembly that was supposed to address sexual harassment issues but quickly devolved into a chaotic event. Dr. Moorman made inappropriate and dismissive comments, including stating, "If she's begging you to stop, you're likely doing it wrong," which was widely perceived as mocking the seriousness of sexual harassment. This comment triggered outrage among the students, leading to a second assembly the following day, where LCU's Dean of Students and President issued an apology to the female students in attendance. This assembly underscored the administration's lack of sensitivity to sexual harassment issues and left Plaintiff feeling unsafe and unsupported in her decision to report her harasser.

**15. University's Conduct and Plaintiff's Decision to Seek Legal Recourse**

LCU's handling of Plaintiff's case contributed to her deteriorating mental health, leading her to seek legal assistance. Plaintiff and her family ultimately decided to pursue legal recourse due to the university's continued dismissal of her concerns and refusal to provide appropriate redress.

**16. Ongoing Harm and Emotional Distress**

Plaintiff continues to experience emotional distress, educational setbacks, and financial challenges due to LCU's mishandling of her Title IX complaint and withdrawal, the university's failure to address her concerns, and the retaliatory actions of her former peers. Plaintiff has also suffered the loss of her TOPS Performance Award, further compounding the impacts of LCU's conduct.

**17. Resignation of Key University Officials**

In the aftermath of Plaintiff's withdrawal and the exposure of the university's mishandling of sexual harassment claims, Dr. Clark, the Vice President of the university, and Dr. Brewer, the President of LCU, both resigned from their positions. This resignation underscores the extent of the university's failure to respond adequately to Plaintiff's complaint and the broader systemic issues within the administration.

**18. Failure to Promptly and Equitably Investigate**

Defendant has failed to meet its obligations under Title IX by excluding Plaintiff from the investigation process entirely. This exclusion constitutes deliberate indifference under Title IX as defined in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998), which held that institutions are liable when they have actual knowledge of misconduct and respond with deliberate indifference. Plaintiff was merely informed that the matter was "being handled" and received no notice of her rights under Title IX. This deprived Plaintiff of an opportunity to provide evidence, identify witnesses, or respond to findings (see Exhibit C).

**19. Violation of Grievance Procedures**

Defendant failed to comply with Title IX grievance procedures. Specifically:

- No live hearing with cross-examination by party advisors occurred.

- No written determination by an unbiased decision-maker was issued.

These procedural omissions demonstrate a failure to meet basic Title IX standards and establish deliberate indifference to Plaintiff's rights.

**20. Lack of Proactive Measures**

LCU has not taken proactive steps to address the harassment or foster a safe educational environment. This inaction is particularly egregious under the standard established in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), which held that institutions act with deliberate indifference when they fail to address known acts of harassment that effectively deprive victims of access to educational opportunities. Even after receiving a demand letter from Plaintiff's counsel (see Exhibit H), LCU failed to implement corrective measures to ensure compliance with Title IX. This inaction aligns with the deliberate indifference standard established in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), which held that institutions are liable when they act with deliberate indifference to known acts of harassment that deprive victims of access to educational opportunities. This exacerbated the harm to Plaintiff and undermines Defendant's claim that it acted reasonably.

**21. Exclusion and Deprivation of Procedural Fairness**

By excluding Plaintiff from the investigation and decision-making process, Defendant created a biased and flawed system. Plaintiff has been deprived of the opportunity to meaningfully participate, further entrenching the inequities in the university's handling of her complaint.

**22. Emotional Distress and Loss of Educational Opportunities**

As a result of Defendant's deliberate indifference and procedural failures, Plaintiff has suffered significant emotional distress, loss of educational benefits, and a hostile educational environment. The actions of Professor Canella, coupled with LCU's mishandling of her complaint, forced Plaintiff to withdraw from the university, causing her to lose scholarships and suffer academic setbacks (see Exhibit I). This harm aligns with the ruling in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), which recognizes that deliberate indifference to severe and pervasive harassment effectively deprives victims of access to educational opportunities. This aligns with the Davis decision, which recognizes that deliberate indifference to severe and pervasive harassment can effectively bar victims from educational benefits.

**23. Failure to Provide Transparency**

LCU has failed to deliver a detailed explanation of the investigation process, findings, and outcomes to Plaintiff. This lack of transparency further illustrates Defendant's indifference and lack of accountability.

**IV. TITLE IX VIOLATION**

1. Under Title IX, educational institutions receiving federal funds are prohibited from discriminating on the basis of sex, including failing to address sexual harassment or assault claims appropriately.

2. Defendant LCU failed to uphold its obligations under Title IX by failing to provide a safe and nondiscriminatory educational environment and failing to take prompt and appropriate action to address Plaintiff's complaints.
3. Defendant's failure to address the harassment constitutes deliberate indifference under Title IX, causing Plaintiff to suffer damages, including but not limited to emotional distress, academic harm, and loss of educational opportunities.
4. Defendant's exclusion of Plaintiff from the investigation process constitutes deliberate indifference under Title IX.
5. Furthermore, despite sending two demand letters to the university, the Plaintiff did not receive a response until October 20, 2024, when the university's attorney informed counsel that the delay in response was due to a vacation, extending the response period another three weeks. This continued delay has exacerbated the harm to the Plaintiff and demonstrates the Defendant's lack of seriousness in addressing these complaints.Despite receiving demand letters, Defendant still failed to take corrective measures, further evidencing deliberate indifference.
6. Defendant's failure to adhere to grievance procedures—including the absence of a live hearing, cross-examination, and written determination—violates federal law.
7. Defendant's actions and omissions created a hostile educational environment, depriving Plaintiff of educational benefits and causing her emotional harm.
8. The culture of discrimination and mistreatment of female students at Louisiana Christian University is evident not only in the handling of Plaintiff's case but also in the actions taken in response to another student's Title IX complaint. Specifically, Plaintiff has obtained a letter showing that another student was denied the right to address a Title IX complaint because the complaint was not filed within 14 calendar days of the incident, a policy which fails to align with Title IX's requirements.
9. Plaintiff's emotional distress and educational setbacks are a direct result of Defendant's Title IX violations.

## V. CAUSES OF ACTION

**COUNT 1: Title IX Violation – Deliberate Indifference**

1. Defendant's exclusion of Plaintiff from the investigation process constitutes deliberate indifference under Title IX.
2. Defendant's failure to adhere to grievance procedures—including the absence of a live hearing, cross-examination, and written determination—violates federal law.
3. Defendant's actions and omissions created a hostile educational environment, depriving Plaintiff of educational benefits and causing her emotional harm.
4. Defendant's failure to address the inappropriate text messages from Professor Cannella further underscores their deliberate indifference. These messages included grooming behavior (see Exhibit F), personal oversharing (see Exhibits G and H), and unprofessional comments about

      colleagues and students (see Exhibit I). By failing to act on these communications, Defendant exacerbated the hostile environment and deprived Plaintiff of a safe educational experience.
5. Plaintiff's emotional distress and educational setbacks are a direct result of Defendant's Title IX violations.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. A judgment in Plaintiff's favor, declaring that Defendant's actions violated Title IX;
2. An injunction requiring Defendant to:
    a. Implement policies, procedures, and training to address and prevent sexual harassment;
    b. Ensure compliance with Title IX grievance procedures, including transparency and fairness;
    c. Provide Plaintiff with access to counseling and support services to address the harm caused by Defendant's conduct;
3. An award of damages to compensate Plaintiff for:
    a. Emotional distress and mental anguish;
    b. Academic and financial harm resulting from Defendant's actions;
4. An award of attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988;
5. Any other relief that this Court deems just and equitable.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable by jury, specifically those concerning the factual disputes regarding the handling of her Title IX complaint and the legal determinations related to Defendant's obligations under federal law.

Respectfully submitted,

**Jovontee Curlee, Esq.**
Bar Roll No. 39530
2320 Drusilla Lane Suite A PMB 2040
Baton Rouge, Louisiana, 70809
225-240-8802
jovontee@jcelaw.org

**Exhibit Index**

1. **Exhibit A**: Written statement submitted by Plaintiff's mother.
2. **Exhibit B**: Apology letters from Professor Canella.
3. **Exhibit C**: Email correspondence with LCU's Title IX office.
4. **Exhibit D**: Financial aid emails.
5. **Exhibit E**: Audio recording.
6. **Exhibit F**: Text messages containing grooming behavior from Professor Cannella.
7. **Exhibit G**: Text messages with personal oversharing by Professor Cannella.
8. **Exhibit H**: Text messages discussing Professor Cannella's struggles with relationships and lack of support.
9. **Exhibit I**: Text messages containing unprofessional remarks about colleagues and students.
10. **Exhibit J**: Documentation of Plaintiff's TOPS Performance Award loss.